hMAX N. TOBIAS, JR., Judge.
Kevin Liner (“Liner”), the appellant, has appealed from a judgment finding that his medical malpractice case against the ap-pellees, the Metropolitan Developmental Center (“MDC”) and the State of Louisiana, Department of Health and Hospitals (“DHH”) has prescribed. For the reasons that follow, we affirm the trial court.
In his original petition filed in the Twenty-Fifth Judicial District Court for the Parish of Plaquemines, Liner alleged that he was receiving maintenance, care, treatment, and protection at MDC located in Belle Chasse, Louisiana. MDC is a state run and/or controlled facility that provides maintenance and care for handicapped and other infirmed people, including the mentally handicapped. On 29 July 2001, Liner was attacked while he slept by a “dangerous party” being housed at MDC. Liner was stabbed repeatedly and bludgeoned, sustaining severe and permanent injuries.
Liner alleged that MDC and DHH were negligent because they failed to provide protection from dangerous patients, allowed the assailant access to a knife, and failed to supervise the assailant. He further alleged that the staff of MDC did not provide him timely medical care because it was seeking a way to “cover up” |Pthe scenario and protect it from liability. In this regard, Liner pleaded fraud and conspiracy.
Liner’s initial suit was filed on 14 May 2002. He contends that after several extensions of time, MDC and DHH filed an answer.[1] After discovery, MDC and DHH filed an exception of prematurity on 16 January 2003, arguing that Liner’s cause of action was for medical malpractice, necessitating a medical review panel before suit could be filed. The trial court granted the exception on 27 February 2003 and dismissed the petition without prejudice. Liner did not appeal the judgment and that judgment is now final.[2]
On 9 April 2003, Liner filed a medical malpractice complaint with the Louisiana Division of Administration and Patients Compensation Fund, alleging that MDC and DHH were negligent and rendered substandard care to him on 29 July 2001. MDC and DHH filed a petition for discovery in the Civil District Court for the Parish of Orleans and thereafter filed a peremptory exception of prescription, which was granted by the trial court on 6 February 2004, dismissing Liner’s malpractice claim. This appeal followed.
Liner has set forth three assignments of error. First he argues that once the Twenty-Fifth Judicial District Court dismissed his suit for prematurity, he had 64 days left in which to file his malpractice claim. Second, he contends that no conflict exists between La. C.C. art. 3462 and La. R.S. 40:1299.47(A)(2)(a); thus he had 64 days left in which to file his malpractice claim. Finally, Liner maintains that Le *64 Breton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226, is not on point in this Lease and did not address whether La. C.C. art. 3462 and La. R.S. 40:1299.47(A)(2)(a) were in conflict.
In response, MDC and DHH contend La. R.S. 40:1299.39(A)(1) requires that all medical malpractice claims be submitted to a medical review panel before filing suit; pursuant to La. R.S. 40:1299.39.1(A)(2)(a), filing a request for review of a medical malpractice claim with the wrong agency or entity, other than the Division of Administration, does not suspend or interrupt the running of prescription. MDC and DHH point out that the Supreme Court held in both LeBreton, supra, and Washington v. Fustok, 2001-1601 (La.9/21/01), 797 So.2d 56, that a premature suit filed in a medical malpractice proceeding does not interrupt prescription. Thus, the trial court was correct when it granted the exception of prescription.
Pursuant to La. R.S. 40:1299.39.1(A)(l)(a), all malpractice claims must be reviewed by a state medical review panel. The prescriptive period for a medical malpractice claim is one year, La. R.S. 9:5628; the prescriptive period for a delictual action is also one year, La. C.C. art. 3492. Further, La. R.S. 40:1299.39.1(A)(2)(a) provides as follows:
The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part,[3] until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of .the issuance of the opinion by the state Rmedical review panel, in the case of the state or persons covered by this Part, or, in the case of a health care provider against whom a claim has been filed under the provisions of this Part who has not qualified under this Part, until sixty days following notification by certified mail to the claimant or his attorney by the commissioner that after requesting evidence of such qualifications under this Part and waiting the passage of at least ninety days, the commissioner has not received a certificate or other evidence sufficient to establish that the person is covered by this Part. The filing of a request for review of a claim shall suspend the running of prescription against all joint or solidary ob-ligors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are subject of the request for review. Filing a request for review of a malpractice claim required by this Section with any agency or entity other than the division of administration shall not suspend or interrupt the running of prescription. [Emphasis supplied.]
The issue presented herein was discussed by the Supreme Court in LeBreton, supra, as follows:
As we recognized in Everett v. Goldman, 359 So.2d 1256 (La.1978), this provision [La. R.S. 40:1299.47(B)(l)(a)(i) ] requires that a patient “must provoke a medical review panel and receive an opinion from it before he can file suit in *65 a court of law.” Id. at 1263. If a medical review panel is timely confected, La. R.S. 40:1299.47(A)(2)(a) complements La. R.S. 40:1299.47(B)(l)(a)(i) by specially providing that “[t]he filing of the request for a review of a claim shall suspend the time within which suit must be instituted, ... until ninety days following notification ... to the claimant or his attorney of the issuance of the opinion by the medical review panel.... ” (Emphasis added).... Simply stated, the filing of a medical malpractice claim with a medical review panel triggered the suspension of prescription specially provided by the Medical Malpractice Act, rather than the interruption of the liberative prescriptive period generally provided in the Civil Code.
97-2221 at pp. 8-9, 714 So.2d at 1230 [emphasis by the Court].
| RThe Court concluded that a medical malpractice plaintiff could not simultaneously take advantage of an interruption of prescription caused by the filing of suit in a court of competent jurisdiction under La. C.C. art. 3462, and a suspension of prescription caused by the subsequent filing of a request for review of a medical malpractice claim before a medical review panel under La. R.S. 40:1299.47(A)(2)(a). Thus, the Court held that the “specific” statutory provision providing for the suspension of prescription found in the malpractice statute should be applied alone and not with the more “general” codal article which addresses the interruption of prescription. Id.
Chief Justice Calogero dissented, finding no conflict between La. C.C. art. 3462 and La. R.S. 40:1299.47(A)(2)(a), because both provisions could “easily be harmonized with the result of each provision being given full effect. Thus, the rule of statutory construction relied upon by the majority — that is, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character is simply not applicable.” Id. at p. 2, 714 So.2d at 1232. Therefore, a plaintiff could file a lawsuit for malpractice simultaneously with a request for a medical review panel. Chief Justice Calogero further noted:
As further support for its conclusion that the plaintiff cannot simultaneously take advantage of the interruption of prescription pursuant to Civil Code article 3462 and the suspension of prescription pursuant to LSA-R.S. 40:1299.47(A)(2)(a), the majority notes that a contrary finding would encourage medical malpractice plaintiffs to file premature suits in the district court, prior to filing requests for review before the medical review panel, in order to gain an additional year of prescription. Although I find the majority’s concern to be unwarranted, I note that it is within the exclusive province of the Legislature to correct any such undesired “loophole” that might result from the courts’ concurrent application ofj^two unambiguous and non-conflicting statutory provisions.
Id. at p. 4, 714 So.2d at 1233.
The issue arose again in Washington v. Fustok, 2001-1601 (La.9/21/01), 797 So.2d 56, wherein Dr. Fushtok applied for a supervisory writ after his exception of prescription was denied by the trial court. There, the Court held:
Granted. Plaintiffs premature suit did not interrupt prescription. LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226. Moreover, the application indicates plaintiffs request for medical review panel was filed more than one year from the date of the alleged malpractice. As a result, prescription was never suspended under La. 40:1299.47 A(2)(a). Accordingly, the judgment of the trial *66 court is reversed, and relator’s exception of prescription is granted.[4]
Id. at p. 1, 797 So.2d at 56.
We note that both LeBreton and Washington involved claims for medical malpractice against private, non-state-related qualified health care providers. Liner’s claims in contrast are against state agencies. Therefore, Liner’s claims fall solely under La. R.S. 40:1299.39 and 40:1299.39.1. By analogy to both LeBreton and Washington and the literal language quoted and emphasized above in La. R.S. 40:1299.39.1(A)(2)(a), we find that we are required to affirm the trial court.[5] Each holds that in order to timely suspend the one-year prescriptive period for a claim, of medical malpractice against a covered health care provider, the claim, must be filed with the Louisiana Division of Administration; filing suit in a court of competent jurisdiction will have no effect on the prescriptive period on the 17claim against a covered person or entity.
We note the inequities presented by the facts presented in the case at bar, especially in light of the original suit filed in Plaquemines Parish which may not have been a pure case of medical malpractice; but the jurisprudence and relevant statute hold that a premature lawsuit does not interrupt prescription. Therefore, the lawsuit filed by Liner in the Twenty-Fifth Judicial District Court did not interrupt the one-year prescriptive period. Once the exception of prematurity was granted, the prescriptive period for filing the request for the medical review panel had run: Thus, if a plaintiff has a claim that may even remotely sound in medical malpractice, he or she should file a request for a medical review to suspend prescription, for failure to do so may, if the defendant is a person or entity (state health care provider or a person covered 'by Part XXI-A of Chapter 5 of Title 40 of the Louisiana Revised Statutes) covered by La. R.S. 40:1299.39 et seq., result in a case prescribing. If the medical review panel determines that the matter is not malpractice or that the health care provider is not “qualified,” suit can then be filed within the time remaining in the one-year period.
For the reasons set forth above, we affirm the judgment of the trial court.
AFFIRMED.

. Because we do not have the Twenty-Fifth Judicial District Court record before us, we are relying on Liner's representations in this regard. We presume that MDC and DHH filed all pleadings in the Twenty-Fifth Judicial Court jointly and that the judgment rendered therein dismissed the plaintiffs claims against both MDC and DHH.

. We express no opinion whether the judgment would have res judicata effect. La. R.S. 13:4232

. "Part” refers to Part XXI-A of Chapter 5 of Title 40 of the Louisiana Revised Statutes. Although Liner argues the applicability of La. R.S. 40:1299.47 to this case, it is technically inapplicable. La. R.S. 40:1299.47 is contained in Part XXIII of Chapter 5 of Title 40 of the Louisiana Revised Statutes. Since Liner's claims apparently sound in medical malpractice relating to state services, La. R.S. 40:1299.41 et seq. are technically inapplicable to his claims; however, the provision of La. R.S. 40:1299.47 shed some light on the case at bar for purposes of analyzing the law applicable to this case.

. Again, Chief Justice Calogero dissented stating: "I would grant and docket in order to reconsider the issue resolved in LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226. As set forth in my dissent in LeBreton, I find no conflict between the provisions to Civil Code article 3462 and LSA-R.S. 40:1299.47(A)(2)(a), as both provisions can easily be harmonized with the result of each provision being given full effect. The purpose for denying claims that are prescribed is to avoid denying the defendant a timely opportunity to investigate a matter and prepare a defense. That purpose is not served here, where the defendant was sued less than one year from the occurrence of plaintiff’s injuty.” Id. at p. 1, 797 So.2d at 56-57.

. We note that La. R.S. 40:1299.47(B)(l)(a)(i) states: “No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant’s proposed complaint has been presented to a medical review panel established pursuant to this Section.”